Vera Rogers **JONES, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 597–84L.**

United States Claims Court.

Dec. 9, 1985.

Richard Dauphinais, Native American Rights Fund, Washington, D.C., for plaintiffs.

Patricia L. Weiss, with whom was Asst. Atty. Gen. F. Henry Habicht II, Washington, D.C., for defendant.

## OPINION

KOZINSKI, Chief Judge.

Plaintiffs, members of the Nez Perce Tribe, sue the United States claiming damages for a breach of trust that appears to have been established by earlier judicial proceedings. Defendant moves to dismiss, arguing that the claim is barred by the statute of limitations.

### Facts

Plaintiffs are successors in interest to Hattie Davis Rogers who, in 1912, was allotted property in Nez Perce County, Idaho, as part of a disbursement of reservation lands to individual indians. The property was held in trust by the United States pursuant to 25 U.S.C. § 348 (1982). Hattie Davis Rogers was considered a ward of the federal government and her request that she be vested with title to the property was refused in 1914 because an Indian Service representative doubted she was capable of managing it. At that time she was maintaining a home on the property and producing income by running a small business and renting a portion of her building to a bank.

Shortly thereafter Nez Perce County purported to tax the property. In 1918, the United States, as trustee, obtained a district court decree voiding the tax assess-

ment and enjoining future taxation. Only five years later, the county once again levied a tax on the property. For reasons not clear on this record, *but see* p. 296 n. 2 *infra,* the United States did not return to district court to seek enforcement of the 1918 decree, nor did it otherwise protect the property from the illegal tax levy. The property taxes remained unpaid for some years and Hattie Davis Rogers was evicted in 1927. In 1937 the county conveyed the property at a tax sale.

Hattie Davis Rogers died in 1964, dispossessed of her property as she had been for the preceding 37 years. During that period nothing was done to set aside the tax sale or recover the property.

In 1972, plaintiffs brought suit in Idaho district court seeking return of the property and damages; named as principal defendants were the putative property owners, Nez Perce County and the United States. Five years later, the United States was realigned as a party plaintiff and in 1979 the district court granted summary judgment for plaintiffs and ordered the property returned to the United States in trust for the successors of Hattie Davis Rogers. *Brooks v. Nez Perce County,* No. 2–72–27, slip. op. at 1 (D.Idaho Oct. 15, 1979). On appeal, the Ninth Circuit also held that plaintiffs were entitled to damages to compensate them for the illegal use of their property, but noted that the government's lack of diligence in pursuing the claim could be considered in calculating those damages. *Brooks v. Nez Perce County,* 670 F.2d 835 (9th Cir.1982). The district court found that plaintiffs suffered damages of $216,000 but awarded only half that amount, stating as follows:

> Certainly the [U.S.] government was most dilatory in the exercising of its role as trustee in this matter and this court cannot in good conscience assess full damages for the present value of past income on the property against the taxpayers of Nez Perce County. The court finds that by reason of the foregoing, net damages should be decreased by at least 50 percent rounded off to a damage sum for present value of past income in the sum of $108,000.00.

*Brooks v. Nez Perce County,* No. 2–72–27, slip op. at 3, (D.Idaho Mar. 3, 1983).

Judgment for plaintiffs was entered in March 1983 and no appeal was taken. Instead, plaintiffs filed suit in this court on November 15, 1984, seeking to recover $108,000 from the United States, the amount by which their district court judgment had been reduced because of the government's failure to bring suit in a more timely fashion.

## Contentions of the Parties

Confronted with an apparently established breach of trust, defendant unblinkingly invokes our six-year statute of limitations. 28 U.S.C. § 2501 (1982). Defendant argues that all of the events establishing defendant's liability occurred a long time ago: when defendant first allowed Nez Perce County to levy taxes in violation of the district court decree (61 years before this suit was brought); when defendant allowed the property to be sold by the county to recover the delinquent taxes (47 years before suit); a reasonable time thereafter when Hattie Davis Rogers should have realized that the United States would do nothing to recover her property; or, at the latest, in 1977 when the United States realigned itself as a party plaintiff in the district court litigation, effectively conceding that it had violated its trust responsibility by allowing the land to be taken away from the allottee (some 8 years before the action here was filed). Defendant reminds the court, lest it be lured into error by compelling facts, that "[b]ecause this statute of limitations is an integral part of the federal government's waiver of sovereign immunity, it is jurisdictional, it must be strictly construed and it cannot be waived by this court." Def. Br. 5 (citing *Bevelheimer v. United States,* 4 Cl.Ct. 558, 561 (1984); *Parker v. United States,* 2 Cl.Ct. 399, 402 (1983); *Gerber v. United States,* 2 Cl.Ct. 311, 315 (1983)).

Plaintiffs, through able counsel, have made a valiant effort to overcome the limitations defense. They argue that their claim did not accrue, for statute of limitations purposes, until the district court litigation had been completed and they first learned that they suffered monetary damages because of defendant's breach of trust. Alternatively, plaintiffs argue that the statute of limitations has never even begun to run because their "claim to the fair rental value ... is the equivalent to a claim for the land itself," Pl. Br. 34, and because the trust relationship between the United States and plaintiffs has never been repudiated, precluding the running of the statute of limitations.

## Discussion

 This is an unusual case in that defendant's culpability—the misfeasance upon which plaintiffs' claim is based—appears to be established by an earlier court ruling. This earlier ruling is now final and binding on the parties to this lawsuit. Unlike most cases involving a statute of limitations defense, many of the policies underlying that defense do not apply here: there is no risk that time has clouded memories, that witnesses have died or disappeared, or that evidence has been destroyed. Nevertheless, as defendant points out, the statute of limitations is jurisdictional and the court cannot waive it on grounds of policy or equity.

 i. Plaintiffs' claim for breach of trust consists of the government's failure to (1) enforce the 1918 decree enjoining the taxation of the property; (2) block Hattie Davis Rogers' eviction; (3) prevent the tax sale; and (4) seek return of the property once it was sold. The first three of these violations occurred long before this suit was brought, far outside the reach of this court's jurisdiction as limited by 28 U.S. § 2501 (1982). The remaining violation—failure to have the property returned—was a continuing breach of trust and plaintiffs might have been able to bring suit for a six year period immediately prior to the filing of the complaint. The continuing breach ended, however, when the United States joined plaintiffs in seeking return of the property; this occurred in 1977, more than six years before suit was filed in this court. While plaintiffs could not be absolutely certain the United States had committed a breach of trust, or the extent of the damage they might have suffered, this is of no moment. Plaintiffs invariably bring lawsuits without knowing for sure what, if anything, they will recover. For purposes of determining when the statute of limitations began to run, the key points are that (1) the conduct establishing defendant's liability occurred in the distant past, and (2) the facts underlying their claims were known to plaintiffs and their predecessor in interest. *Braude v. United States*, 585 F.2d 1049, 218 Ct.Cl. 270 (1978); *Spevack v. United States*, 390 F.2d 977, 182 Ct.Cl. 884 (1968); *Japanese War Notes Claimants Ass'n v. United States*, 373 F.2d 356, 178 Ct.Cl. 630, *cert. denied*, 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967). That they may not have fully appreciated the legal consequences flowing from defendant's nonfeasance—including the possibility that they might be entitled to money damages—does not toll the statute of limitations. *Menominee Tribe of Indians v. United States*, 726 F.2d 718 (Fed.Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 106, 83 L.Ed.2d 50 (1985); *Affiliated Ute Citizens v. United States*, 199 Ct.Cl. 1004 (1972); *Capoeman v. United States*, 440 F.2d 1002, 194 Ct.Cl. 664 (1971).

ii. Plaintiffs' argument that the statute of limitations never began to run because of the trust relationship between the United States and Hattie Davis Rogers presents a somewhat closer issue. According to plaintiffs "[t]he 'universal rule' is that the statute of limitations 'does not run against a beneficiary in favor of a trustee until the trust is repudiated and the fiduciary relationship is terminated.'" Pl. Br. 35 (quoting *Manchester Band of Pomo Indians, Inc. v. United States*, 363 F.Supp. 1238, 1249 (N.D.Cal.1973); citing *United States v. Taylor*, 104 U.S. 216, 14 Otto 216, 26 L.Ed. 721 (1881); *Russell v. United States*, 37 Ct.Cl. 113 (1902); *Wayne v. United States*, 26 Ct.Cl. 274 (1891)).

 This rule is not applicable where the claim is for damages arising from misfeasance or nonfeasance by the trustee, rather than for recovery of the trust corpus. For example, in *United States v. Taylor* the claim was for money held in trust for more than six years by the Secretary of the Treasury. The Court explained that the six year statute of limitations did not apply because the proceeds belonged to plaintiff, and the Secretary was under a ministerial duty to hand it over upon application: "The person entitled to the money could allow it to remain in the treasury for an indefinite period without losing his right to demand and receive it. It follows that if he was not required to demand it within six years, he was not required to sue for it within that time." 104 U.S. at 221. *Accord Russell*, 37 Ct.Cl. at 117–18; *Wayne*, 26 U.S. at 289–90. The theory of these cases appears to be that money which is conceded to be held in trust is not a debt. Since entitlement to the trust corpus is not in dispute, ownership need not be established by means of lawsuit to which the statute of limitations applies. Only when the trust is repudiated by the trustee, and entitlement to the corpus (or a portion thereof) is claimed adversely to the benefi-

ciary, does the relationship change to that of debtor and creditor, and a lawsuit then becomes necessary to establish entitlement. At that point the statute of limitations begins to run. *Taylor*, 104 U.S. at 222; *Russell*, 37 Ct.Cl. at 118; *Wayne*, 26 Ct.Cl. at 289.

 The suit here, for damages arising from misfeasance of the trustee, is fundamentally different from *Taylor, Russell* and *Wayne*. This is not a dispute as to entitlement to a trust corpus that defendant is holding adversely to plaintiffs. Here, the theory of recovery is based upon damages suffered because of defendant's mishandling of its trust responsibilities, an action akin to breach of contract, as to which the fact and extent of liability would normally be in dispute. G. Bogert, *The Law of Trusts and Trustees* §§ 861–880 (2d ed.1984). The question is not whether defendant will give plaintiffs what belongs to them but whether it will be forced to indemnify them for losses suffered in dealings with a third party. Such claims are not covered by the rule expressed in *Taylor* or its progeny, and suit thereon must be brought within six years of defendant's breach of trust. *Menominee*, 726 F.2d at 721–22.[1] In any case, defendant's gross and protracted failure to fulfill its fiduciary responsibility constituted an implicit[2] repudiation of the trust relationship, which should have put the beneficiary on notice that she might suffer damages.

Equally unpersuasive is plaintiffs' claim that the suit here is not barred by the statute of limitations because it involves a claim for real property, or its monetary equivalent. This suit is not for recovery of the property or the profits therefrom; that was the subject of the district court action. The property was, in fact, returned to plaintiffs, together with such of the mesne profits as were not barred by the government's conduct. This action is for damages arising from breach of trust and bears no relationship to the land in question or the profits therefrom, except as they establish the measure of damages.

iii. The court has considered and rejected plaintiffs' other arguments. The sad fact is that the wrong committed by the United States against its ward, Hattie Davis Rogers, and her successors in interest, occurred a very long time ago, and all of the material facts were known to those wronged. It would do severe violence to our statute of limitations, and the concept of this court's limited jurisdiction, to entertain plaintiffs' claim, attractive as that result might be in light of defendant's established mishandling of its trust responsibilities.

 To hold the claim is barred by the statute of limitations does not mean that the United States should not pay plaintiffs the money in question, or some fraction thereof. It does mean that the obligation, if there be one, cannot be satisfied through litigation in this court but must be presented directly to Congress, which retained authority over all claims against the United States that go back more than 6 years or otherwise fall outside our jurisdictional purview. *See Absher v. United States*, 9 Cl.Ct. 223, 227 (1985); *Flanagan v. United States*, 2 Cl.Ct. 587, *aff'd mem.*, 727 F.2d 1120 (Fed.Cir.1983).

### Conclusion

The clerk is directed to dismiss the complaint. No costs.

---

**1.** To the extent that *Manchester Band of Pomo Indians, Inc. v. United States,* 363 F.Supp. 1238, 1249–50 (N.D.Cal.1973), suggests a contrary rule, the court is unpersuaded and declines to follow.

**2.** There is an indication on this record that the government's failure to protect Hattie Davis Rogers' interest in the property was based upon an *express* repudiation of the trust relationship. *See* Complaint ¶ 15. If that was the case, the rule in *Taylor* would be inapplicable by its own terms. *See Capoeman,* 194 Ct.Cl. at 668.